837 F.2d 453
 18 Collier Bankr.Cas.2d 324, Bankr. L. Rep. P 72,196
In re PROSPECT HILL RESOURCES, INC., d/b/a Bass & Company, Debtor.
Charles FOLSOM, Jr., Plaintiff-Appellee,
v.
PROSPECT HILL RESOURCES, INC., d/b/a Bass & Company,
Defendant-Appellant.
 No. 87-8324.
 United States Court of Appeals, Eleventh Circuit.
 Feb. 11, 1988.
 
 Zusmann, Small & White, G.H. Small, Jr., Shereen M. Walls, Atlanta, Ga., for defendant-appellant.
 James W. Dilz, Swift, Currie, McGhee & Hiers, David W. Pollard, Atlanta, Ga., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before ANDERSON, EDMONDSON and GOODWIN*, Circuit Judges.
 PER CURIAM.
 
 
 1
 Charles Folsom, Jr. appealed to the district court from the bankruptcy court's partial disallowance of his claim against the bankrupt estate. The district court reversed the bankruptcy court and held that because Folsom was not an employee at the time the debtor breached its contract with him, 11 U.S.C.A. Sec. 502(b)(7) (West Supp.1987) does not apply to his claim. Accordingly, the district court held, his claim should have been allowed. We affirm.
 
 
 2
 The facts are not in dispute. The debtor's predecessor, Prospect Hill Resources, entered into an employment agreement with Folsom on July 14, 1970. Pursuant to the agreement, Folsom served as president and chief executive officer of the company until his retirement in October 1981. The agreement entitled Folsom to receive from the company upon his retirement $30,000 annually, payable in equal monthly installments, "so long as he shall live." The agreement also provided that if Folsom were to die within ten years after his retirement, the sum of $20,000 annually would be paid in equal monthly installments to the individual or individuals designated by Folsom until the expiration of a period of ten years from the date of Folsom's retirement. Folsom received the agreed payments for more than three years following his retirement until the debtor filed its Chapter 11 petition in February 1985. The last monthly payment by the debtor to Folsom was made February 1, 1985. Folsom filed a proof of claim in the Chapter 11 proceedings alleging an unsecured indebtedness of $213,122.00, the amount he contends would be the cost of an annuity that would pay him $30,000 annually for life in equal monthly installments of $2,500.
 
 
 3
 Folsom asserted that section 502(b)(7) does not limit a vested claim for retirement benefits, that Congress intended the statute to apply only to termination of executory employment contracts and that the bankruptcy court misconstrued the statute in limiting Folsom's contractual right to retirement benefits. The debtor argued that its contract with Folsom was an employment contract within the meaning of the statute and that termination of the contract in bankruptcy is a termination contemplated by the statute.
 
 
 4
 Section 502(b)(7) allows claims except to the extent that:
 
 
 5
 [I]f such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds--
 
 
 6
 (A) the compensation provided by such contract, without acceleration, for one year following the earlier of(i) the date of the filing of the petition, or;
 
 
 7
 (ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus
 
 
 8
 (B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates.
 
 
 9
 Section 502(b)(7) limits claims arising out of the rejection of an executory employment contract. It also limits claims for future compensation, which conceivably would have been earned had the parties to the agreement performed under the terminated contract. On its face, section 502(b)(7) does not apply to vested retirement benefits. The statute, by its terms, refers to claims by employees, not by retired workers. See Matter of Gee & Missler Servs., Inc., 62 B.R. 841, 845 (Bankr.E.D.Mich.1986) (holding that a dispute involving a collective bargaining agreement is not an "employment contract" subject to section 502(b)(7)).
 
 
 10
 The legislative history of section 502(b)(7) supports the district court. The phrase "termination of employment" is used interchangeably with the statute's reference to termination of "performance." The Supreme Court in Allied Chemical and Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co., Chemical Division, 404 U.S. 157, 168, 92 S.Ct. 383, 392, 30 L.Ed.2d 341 (1971), stated that "[t]he ordinary meaning of 'employee' does not include retired workers; retired employees have ceased to work for another for hire." One purpose of section 502(b)(7) was to relieve bankrupt employers of the continuing duty to pay high salaries to officers and owner-managers who had been able to exact favorable terms of tenure and salaries while the business prospered. A similar purpose is reflected in 11 U.S.C.A. Sec. 502(b)(6) (West Supp.1987) (landlord's damages provisions when performance of a lease is frustrated by bankruptcy). In both situations, ongoing obligations, bilateral in nature, are discontinued by bankruptcy. In these cases, the landlord can lease the real property to others, and the employee can find other work. A retired employee, however, has done his work and earned his retirement. The executory contract has become unilateral, and the right to the bargained-for benefit has vested. Because Prospect's breach of contract did not occasion a termination of Folsom's performance or employment, his claim falls outside section 502(b)(7).
 
 
 11
 AFFIRMED.
 
 
 
 *
 Honorable Alfred T. Goodwin, U.S. Circuit Judge, for the Ninth Circuit, sitting by designation