In re NETWORKS ELECTRONIC CORP., Debtor.

Robert C. BITTERS, Appellant,

v.

NETWORKS ELECTRONIC CORP., Appellee.

BAP No. CC–95–1651–OVJ.
Bankruptcy No. LA 93–34341–AA.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 18, 1996.

Decided April 10, 1996.

Stanley R. Raskin, Torrance, CA, for Appellant.

Steven J. Krause, Encino, CA, for Appellee.

Before: OLLASON, VOLINN and JONES, Bankruptcy Judges.

## *OPINION*

OLLASON, Bankruptcy Judge:

In this case Robert Bitters ("Bitters"), an unsecured creditor and former employee of the debtor, Networks Electronic Corp. ("NEC"), has appealed the bankruptcy court's limitation of his damage claim based on an employment contract action. Moreover, Bitters contends that NEC's objection to his claim was untimely and prejudicial. **We affirm.**

### STATEMENT OF FACTS

NEC filed a voluntary petition under chapter 11 on July 8, 1993.[1] On June 16, 1993, a state court jury verdict was announced against NEC in the amount of $819,650.65 in favor of Bitters, a former executive manager and stockholder of NEC.

In August, 1993, Bitters filed a proof of unsecured claim in the amount of $820,000 alleging the basis for the claim as recovery of wrongful termination damages. The claim arose from the termination of Bitters from the employ of NEC on February 4, 1985, almost nine years prior to the bankruptcy filing. Bitters had been hired, pursuant to

---

**1.** Unless otherwise indicated, references to "chapter" or "section" or "code" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330; references to "rule" or "Fed.R.Bankr.P." are to the Federal Rules of Bankruptcy Procedure, 1001–9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

an oral contract, by NEC on May 19, 1972, and his yearly salary at the time of termination was $48,940.40.

In 1985 and 1986, Bitters filed an action against NEC. Bitters alleged that the complaint was for breach of implied-in-fact-promise not to terminate for good cause, wrongful termination in breach of public policy, intentional infliction of emotional harm, and breach of implied covenant of good faith and fair dealing.[2] On June 16, 1993, a jury returned a verdict based on breach of promise not to terminate except for good cause, and awarded Bitters damages for past and future loss of earnings and benefits. The jury was unable to reach a verdict on other claims, and Bitters had the right to retry them. From 1993 to 1995, the parties held various conferences concerning the state court litigation, for which stay relief had been granted, for purposes of entry of judgment. Bitters agreed to dismiss the remaining mistried claims, and judgment was entered pursuant to the verdict for $819,650.65 on or about January 27, 1995.

The jury made the following pertinent determinations:

*Question No. 1:*

Has plaintiff Bitters proven by a preponderance of the evidence that there was an employee-employer relationship between plaintiff and defendant Networks Electronic Corp.?

*Answer: Yes*

. . . .

*Question No. 4:*

Has the plaintiff proven by a preponderance of the evidence that there was an agreement by defendant Networks Electronic Corp. to terminate plaintiff Bitters only for good cause?

*Answer: Yes*

*Question No. 5:*

Has the plaintiff proven by a preponderance of the evidence that defendant Networks Electronic Corp. violated its agreement with plaintiff Bitters to terminate only for good cause?

*Answer: Yes*

*Question No. 6:*

Has the plaintiff proven by a preponderance of the evidence that defendant Network Electronic Corp.'s violation of its agreement to terminate plaintiff Bitters only for good cause caused plaintiff Bitters to suffer damages?

*Answer: Yes*

*Question No. 7:*

Has plaintiff Bitters proven by a preponderance of the evidence that there was a contract of employment between plaintiff and defendant Networks Electronic Corp.?

*Answer: Yes*

*Question No. 8:*

Has plaintiff Robert Bitters proven by a preponderance of the evidence that defendant Networks Electric Corp., without good faith, deprived plaintiff Bitters of the rights and benefits under the contract?

*Answer: Yes*

NEC filed its second amended disclosure statement and second amended plan of reorganization on May 6, 1994; the second amended plan was confirmed on November 9, 1994. In the second amended disclosure statement, NEC described the claim as disputed:

This class includes the disputed and contingent litigation claims of Robert Bitters . . . based upon . . . employment-termination lawsuits against the debtor.

. . . .

The debtor believes that these claims will be dismissed or substantially reduced in the litigation, appeal and objection processes.

. . . .

*Note Regarding Disputed Claims.* The claims of Robert Bitters . . . are the sub-

---

**2.** Bitters has not included a copy of the state court complaint in the record on appeal. He also contends that the judgment in state court was for breach of an implied-in-fact promise whereas the jury's verdict states the count as breach of "express or implied-in-fact promise" not to terminate except for good cause.

NEC has brought to the panel's attention several facts that it believed Bitters has misrepresented to the panel or that are irrelevant and objectionable. While the panel does not condone purposeful factual errors in the briefs on appeal, we have reviewed these incidents and do not believe they constitute sanctionable conduct.

jects of civil court lawsuits for damages relating to termination of their employment with the debtor. The debtor disputes these claims.

. . . .

*Note to Unsecured Claims.* The debtor intends to file objections to all of the disputed claims, i.e. Robert Bitters . . . .

NEC's amended plan stated that no disputed unsecured claims would be paid "unless and until same are liquidated and determined by a court of competent jurisdiction or by settlement."

At the time the amended plan and disclosure statement were filed, the parties were still negotiating over the state court litigation, which judgment was not entered until approximately six months later, January 27, 1995.

On or about April 7, 1995, NEC filed a formal objection to Bitters' claim, alleging that the claim should be allowed for only one year's compensation because it was a claim for damages as a result of termination of an employment contract, citing § 502(b)(7). Bitters responded. Following a hearing on May 10, 1995, at which the bankruptcy court apparently announced its decision to sustain the objection and to allow the claim in the amount of $48,940.40, Bitters filed a motion for reconsideration pursuant to § 502(j). Following a hearing on June 8, 1995, the court reaffirmed its order except that it increased the allowed amount to $52,525.04. Subsequently, the bankruptcy court entered its memorandum decision and order on the objection on June 5, 1995. Bitters timely appealed the entry of that order.

## ISSUES

1. Whether Bitters' claim was subject to the provisions of § 502(b)(7).

2. Whether NEC was barred from objecting to the proof of claim following plan confirmation.

3. Whether NEC is entitled to sanctions on appeal.

## STANDARD OF REVIEW

■ The interpretation and application of the code is a legal question which we review *de novo.* *See In re Orvco, Inc.,* 95 B.R. 724, 726 (9th Cir. BAP 1989).

■ The panel reviews questions of law *de novo,* *In re Pacific Far East Lines, Inc.,* 889 F.2d 242, 245 (9th Cir.1989), and findings of fact for clear error. *In re Holm,* 931 F.2d 620, 622 (9th Cir.1991). Interpretation of state law is reviewed *de novo.* *In re Park at Dash Point, L.P.,* 985 F.2d 1008, 1010 (9th Cir.1993). The availability of collateral estoppel is reviewed *de novo.* *In re Kelly,* 182 B.R. 255, 258 (9th Cir. BAP 1995).

■ A bankruptcy court's exercise of its broad, equitable powers is reviewed for abuse of discretion. *In re Goldberg,* 168 B.R. 382, 384 (9th Cir. BAP 1994).

## DISCUSSION

■ A duly executed proof of claim is *prima facie* evidence of the validity and amount of a claim. Fed.R.Bankr.P. 3001(f). The burden then switches to the objecting party to present evidence to overcome the *prima facie* case; the ultimate burden of persuasion is on the claimant. *Holm,* 931 F.2d at 623; *In re Murgillo,* 176 B.R. 524, 529 (9th Cir. BAP 1995).

■ While state law is the substantive law applied to determine the origin and existence of a claim, *In re Sparkman,* 703 F.2d 1097, 1099 (9th Cir.1983), the bankruptcy court has sole jurisdiction and discretion to allow or disallow the claim under federal law. *Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939).

Section 502(b)(7) provides a limitation on the allowance of a duly filed proof of claim for damages resulting from termination of an employment contract when an objection has been made:

(b) [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

. . . .

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;

11 U.S.C. § 502(b)(7) (1988).[3]

This section operates as a statutory cap to limit employment-related claims based on the future compensation an employee would have earned had the contract not been terminated. *In re Johnson,* 117 B.R. 461, 465 (Bankr. D.Minn.1990).

The bankruptcy court applied § 502(b)(7) to Bitters' claim, reducing the allowed amount from $820,000 to $52,525.04.

### APPLICATION OF § 502(b)(7) TO THE CLAIM

Bitters has raised several arguments as to why the bankruptcy court erred by disallowing his claim in its entirety.

*Argument No. 1. The state court judgment determined the amount of the claim in bankruptcy.*

█ Bitters contends that his contract claim merged in the state judgment, and the judgment was res judicata. Thus, he contends, the bankruptcy court was precluded from adjudicating the amount of damages for breach of an employment contract. This theory has no practical application in the way Bitters advocates—that § 502(b)(7) should not apply to a damages claim that has been liquidated by judgment.

█ The doctrine of merger of a claim to judgment generally is that the recovery of a judgment creates a new debt or liability dis-

tinct from the original claim or demand, and this new liability is not merely the evidence of the creditor's claim, but is thereafter the substance of the claim itself. *See Timm v. McCartney,* 30 Cal.App.2d 241, 85 P.2d 920, 923 (1938). The judgment becomes the essence of the contract claim.

We have held that "the proper exercise of the bankruptcy court's equitable powers under § 502 is through investigation into the existence, validity and enforceability of claims leading to their allowance or disallowance." *Murgillo,* 176 B.R. at 533. The bankruptcy court in this case found that the claim for damages was determined by the state court, and looked at the record to determine the nature of the state court judgment.

█ Once the bankruptcy court determined that the state court judgment resulted from breach of an employment contract, that claim was subject to the application of an exception to allowance provided in the Bankruptcy Code. *See also Holm,* 931 F.2d at 623 (bankruptcy court refused to disallow claim under § 502(b)(7) where the state court judgment was based on tort, not contract claims). Disallowance of the claim under § 502(b)(7) is a matter of federal law, for it involves the extent to which Congress has exercised its constitutional power to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., art. I, § 8, cl. 4. To the extent that Bitters argues that state law should prevail over the Bankruptcy Code, such is not the case under the Supremacy Clause, U.S. Const. art. VI, § 2. Federal law preempts a state law or order which "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Clark v. Coye,* 60 F.3d 600, 603 (9th Cir.1995) (citing *Edgar v. MITE Corp.,* 457 U.S. 624, 631, 102 S.Ct. 2629, 2634–35, 73 L.Ed.2d 269 (1982)).

*Argument No. 2. Bitters' terminated contract was no longer executory and Section 502(b)(7) only applies to executory contracts.*

█ Bitters contends that since the executory employment contract was terminated

---

3. This section was changed from § 502(b)(8) to § 502(b)(7) in 1984. Concurrently, the section

limiting a landlord's compensation was changed from § 502(b)(7) to § 502(b)(6).

by the breach in 1985, § 502(b)(7) could not apply to it, just as a terminated contract cannot be assumed or rejected. He cites *dicta* from an Eleventh Circuit case which states that in the § 507(b)(7) situation, like the landlord's damages situation of § 502(b)(6), "ongoing obligations, bilateral in nature, are discontinued by bankruptcy." *In re Prospect Hill Resources, Inc.,* 837 F.2d 453, 455 (11th Cir.1988).

In *Prospect Hill,* a retired employee of the corporate debtor filed a proof of claim for his vested interest in retirement benefits. The retiree argued that § 502(b)(7) should not limit his claim because it did not address retirement benefits as opposed to salary. The bankruptcy court held that the employee's employment contract was no longer an executory contract from the time of retirement; therefore the statute, which only applies to executory contracts, did not apply. There is no factual comparison between *Prospect Hill* and this case. Bitters was an employee, not a retired employee, at the time of the breach and termination of his executory employment contract.

 Whether a contract is executory is a matter of federal law, not state law. *In re Wegner,* 839 F.2d 533, 536 (9th Cir.1988). At the time Bitters' employment terminated, there were still obligations to be performed by both Bitters and NEC, therefore it was executory, and the damages resulted from the breach of an executory contract. *Id.* A prebankruptcy material breach "does not convert the executory contract into an executed contract." *In re Alexander,* 670 F.2d 885, 887 n. 1 (9th Cir.1982).

 Furthermore, there is no requirement in § 502(b)(7) that the contract be executory or nonexecutory, or that the section only applies to the rejection of executory contracts, nor does the language address § 365 concerning the assumption or rejection of executory contracts. *See In re Allegheny Intern'l, Inc.,* 158 B.R. 332, 340–41 (Bankr. W.D.Pa.1992). We agree with the following statement:

> Concluding that a contract must still be executory would support an absurd reading of the section because any employment contract that is terminated pre-petition would cease being executory, and ... all pre-petition, non-executory contracts [would be] outside the purview of § 502(b)(7). This result is illogical and void of reason.

*Levinson v. LHI Holding, Inc.,* 176 B.R. 255, 258 (M.D.Fla.1994).

*Argument No. 3. Section 502(b)(7) only applies to written employment contracts containing specific terms.*

 In this argument, Bitters attempts to relitigate the issue of whether there was an employment contract between him and NEC. The bankruptcy court gave collateral estoppel effect to the state court judgment in which the jury specifically made the findings that there was an employee-employer relationship and an employment contract. *See* facts above, questions no. 7 and 8 of the jury verdict. In California an actionable employment contract may be oral. *See Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 218–20, 765 P.2d 373, 380–81 (1988). The fact that an agreement is written is only one factor evidencing an employment contract. *See In re Bergh,* 141 B.R. 409, 417 (Bankr.D.Minn. 1992). In addition, once a written document is before the court for a determination, other factors that give evidence of the employment contract are certain terms and provisions concerning the employment. Therefore, the written terms referred to by Bitters as lacking in his contract are irrelevant to an oral contract.

 Furthermore, Bitters has not provided any evidence of the nature of the agreement presented to the state court except for the jury's verdict. The bankruptcy court did not err by giving the state court finding collateral estoppel effect. The Ninth Circuit adheres to the federal Full Faith and Credit Statute:

> The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States ... as they have

by law or usage in the courts of such State ... from which they are taken.'

*In re Nourbakhsh,* 67 F.3d 798, 800 (9th Cir.1995) (quoting *Marrese v. Am. Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985), and citing 28 U.S.C. § 1738). Therefore, federal courts "must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

 Under California law, collateral estoppel precludes the relitigation of an issue when: 1) the issue is identical to that which was decided in a former proceeding; 2) the issue was actually litigated in the former proceeding; 3) the issue was necessarily decided in the former proceeding; 4) the decision was final and on the merits; and 5) the party against whom preclusion is sought is the same as, or in privity with, the party to the former proceeding. *See Kelly,* 182 B.R. at 258.

Bitters' breach of implied-in-fact promise was a contract action under California law. *See Foley,* 254 Cal.Rptr. at 218–20, 765 P.2d at 380–81; *see also Holm,* 931 F.2d at 623 (judgment resulting from tort action in state court was not subject to limitations of § 502(b)(7)). All the elements of collateral estoppel were met concerning the issue of whether an employment contract existed.

*Argument No. 4. Section 502(b)(7) does not apply to contracts where the termination is remote to the bankruptcy filing.*

 Bitters contends that § 502(b)(7) does not apply to the contract that was terminated almost nine years before NEC filed for bankruptcy. This argument addresses the "temporal aspect" of the statute and raises the most valid and controversial issue thus far in Bitters' appeal. In addition, this issue has been addressed by only a few courts but not decided by a circuit court of appeals.

Section 502(b)(7) does not provide an express time reference in its application to employment contracts. Its words that it limits the claim to compensation for one year

"following the earlier of" the date of the filing of the petition or the date of termination of employment, suggest that employment contract claims that arise any time prepetition are subject to the cap. *See Allegheny Intern'l,* 158 B.R. at 340. There is nothing in the Bankruptcy Code or its legislative history to indicate that the section "should not apply to contract terminations which are deemed to be too remote from the filing of the petition." *In re CPT Corp.,* No. 4–90–5759, 1991 WL 255679, at *2 (Bankr. D.Minn. Nov. 26, 1991). Courts so holding base this conclusion on the plain language of the statute and the silence of the legislative history. *See In re Johnson,* 117 B.R. 461, 467 (Bankr.D.Minn.1990) (were the court to impose a qualification based on remoteness, it would engage in an act of judicial legislation).

The contrary leading case is *In re Vic Snyder, Inc.,* 23 B.R. 185 (Bankr.E.D.Pa. 1982). In *Vic Snyder,* the claimant was a former employee of the debtor whose termination had taken place four and one-half years prior to the chapter 11 petition, and the damage claim had been reduced to judgment in state court prior to the bankruptcy filing. The bankruptcy court refused to apply § 502(b)(7)'s cap. Acknowledging that the legislative history of this section was not explicit, the court looked to the companion provision for the limitation of landlord claims, § 502(b)(6).

Congress has stated that § 502(b)(7) tracks the landlord limitation on damages provision in § 502(b)(6). H.R.Rep. No. 595, 95th Cong., 1st Sess., 354 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6309–10; S.Rep. No. 989, 95th Cong., 2d Sess., 64–65 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5850–51. Congressional intent to limit a landlord's damages where the debtor breached a lease was explained in *Oldden v. Tonto Realty Corp.,* 143 F.2d 916 (2nd Cir.1944):

In truth, the landlord is not in the same position as other general creditors, and there is no very compelling reason why he should be treated on a par with them. *For, after all, he has been compensated up until the date of the bankruptcy petition,* he regains his original assets upon bank-

ruptcy, and the unexpired term in no way really benefits the assets of the bankrupt's estate.

*Id.* at 920 (emphasis added).

Therefore, *Vic Snyder* reasoned that § 502(b)(7) was intended to apply where a breach resulted from the employer's worsening financial condition and to contract damages "flowing from the bankruptcy or its immediate consequences." *Vic Snyder*, 23 B.R. at 186.

Bitters also points to another purpose of § 502(b)(7): "to relieve bankrupt employers of the continuing duty to pay high salaries to officers and owner-managers who had been able to exact favorable terms of tenure and salaries while the business prospered." *Prospect Hill*, 837 F.2d at 455. (Compare § 502(b)(7) with the purpose of § 502(b)(6)— to prevent large landlord claims due to the "crafty draftsmanship" of leases by "shrewd and economically powerful" landlords. *Oldden*, 143 F.2d at 920.) This was not a case of Bitters feathering his nest to the detriment of other creditors of the estate, Bitters contends.

■ Nevertheless, the holding of *Vic Snyder* has been rejected as imposing some sort of equitable cutoff date that is contrary to the plain language of the statute. *See Johnson*, 117 B.R. at 467. *Vic Snyder* was also rejected by the Western District of its own state in *Allegheny Intern'l*, 158 B.R. at 340, and by other courts: *In re LHI Holding, Inc.*, 142 B.R. 1007 (Bankr.M.D.Fla. 1992), *aff'd, Levinson v. LHI Holding, Inc.*, 176 B.R. 255 (M.D.Fla.1994); *In re CPT Corp.*, 1991 WL 255679 (Bankr.D.Minn.1991); and *In re Murray Indus., Inc.*, 130 B.R. 113 (M.D.Fla.1991). These decisions agree that § 502(b)(7) limits damages resulting from termination of an employment contract regardless of when the termination occurred. We choose to side with the majority of cases which have rejected *Vic Snyder* as contrary to the unambiguous statutory provisions.

■ We can see the hardship which a literal reading of the statute would impose upon Bitters: his claim was reduced by over $700,000. The purpose of § 502(b)(7) is to protect the employer/debtor from valid em-

ployee claims which would unreasonably compromise the debtor's fresh start, and work to the detriment of other creditors. The statute strikes a compromise between the fresh start of NEC and Bitters' right to compensation. In this case, the claim arose nine years before bankruptcy and was unrelated to the financial problems of NEC. Nevertheless, the judgment was entered postpetition. Capping Bitters' claim still achieves the purpose of § 502(b)(7): "it limits the allowed amount of the sort of employee claims for damages which are calculated on the basis of the future compensation which the claimant would have earned, had the employer not terminated the contract." *Johnson*, 117 B.R. at 465; *Prospect Hill*, 837 F.2d at 455. The employee-creditor of § 502(b)(7) cannot readily be analogized to the landlord of § 502(b)(6); thus the focus should not be on the similarity of such creditors but on the impact of such claims upon the estate. *See In re Aero–Auto Co., Inc.*, 33 B.R. 107, 108 (Bankr.E.D.Va.1983) (landlord-tenant analogy advanced in argument is neither apt nor necessary in light of the plain language of the statute).

## *PROPRIETY OF NEC'S OBJECTION*

■ Bitters contends that NEC's objection to his proof of claim should have been made before plan confirmation and that NEC waited until Bitters agreed to enter judgment and then "ambushed" him, action contrary to the code and equity. The facts show that show that Bitters filed a proof of claim in August of 1993. The parties continued to negotiate regarding the pending state court litigation. The plan was filed on May 6, 1994, and confirmed on May 9, 1994. In January of 1995, Bitters agreed to the entry of judgment on the verdict. The objection was filed on April 7, 1995.

Bitters has cited no authority for this argument except for cases that are not on point. For example, he cites two chapter 13 cases which stand for the proposition that the objection must be made before the chapter 13 plan is confirmed because the plan must provide for all secured claims, pursuant to § 1325. This is not the general rule in chap-

ter 11, since the plan itself may provide for objections.

In this case the disclosure statement and plan clearly stated that Bitters' claim was disputed and that NEC intended to file objections to the disputed claims, and did not give a deadline for those objections. On the other hand, the plan stated that "[d]isputed unsecured claims shall not be paid unless and until same are liquidated and determined by a court of competent jurisdiction or by settlement." Bitters could have reasonably assumed that, since no objection had been filed and since the claim had been liquidated by judgment, the plan provided for payment of the claim. Nevertheless, we agree with the bankruptcy court that the plan and disclosure statement put Bitters on notice that NEC could file an objection at any time during the life of the plan. This finding was not clearly erroneous.

■ Bitters also implicitly raises the issue of equitable estoppel in that the lack of objection lulled him into dismissing the remaining claims. Once he changed his position, NEC filed the objection. While the events happened in that order, element three of this doctrine was not met:

> (1) The party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct.

*United States v. Hemmen,* 51 F.3d 883, 892 (9th Cir.1995).

■ Bitters was charged with the knowledge that NEC could still file an objection. He should have known that Fed.R.Bankr.P. 3007 does not provide a time limit for objections to proofs of claims. An objection to a proof of claim may be filed at any time. *In re Consolidated Pioneer Mortg.,* 178 B.R. 222, 225 (9th Cir. BAP 1995).

*SANCTIONS ON APPEAL*

■ NEC has requested sanctions for a frivolous appeal. Under Federal Rule of Appellate Procedure 38, made applicable by

BAP rule 13, the panel may award sanctions when "the result is obvious, or the appellant's arguments or error are wholly without merit." *In re Burkhart,* 84 B.R. 658, 661 (9th Cir. BAP 1988). While the greater part of Bitters' arguments was unsupported by statute or case law, the temporal aspect of § 502(b)(7) is an issue that is yet undecided by the higher courts. The appeal was not wholly without merit, and sanctions are not warranted. *Taylor AG Indus. v. Pure–Gro,* 54 F.3d 555, 563 (9th Cir.1995).

## CONCLUSION

The bankruptcy court correctly applied § 502(b)(7) to cap Bitters' claim for damages which arose from the breach of an employment contract. The bankruptcy court did not abuse its discretion by sustaining NEC's objection as timely under Fed.R.Bankr.P. 3007, and as anticipated in the provisions of NEC's confirmed chapter 11 plan. Sanctions shall not be awarded on appeal. The bankruptcy court's order of June 5, 1995 is **AFFIRMED.**