NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No.   CC-11-1131-PaMkLa |
| | ) |
| BROTMAN MEDICAL CENTER, INC., | ) Bk. No.   07-19705-BB |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| RETHA GREEN, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| BROTMAN MEDICAL CENTER, INC. | ) |
| CREDITOR'S TRUST, | ) |
| | ) |
| Appellee. | ) |
| | ) |
| _____ | ) |

Argued and Submitted on January 20, 2012
at Pasadena, California

Filed - January 31, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sheri A. Bluebond, Bankruptcy Judge, Presiding

Appearances:   Freddie Fletcher, Esq. argued for appellant Retha Green; Paul S. Arrow of Buchalter Nemer, PC argued for appellee Brotman Medical Center, Inc. Creditor's Trust.

Before: PAPPAS, MARKELL and LAFFERTY,[2] Bankruptcy Judges.

---

[1]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value.  See 9th Cir. BAP Rule 8013-1.

[2]   The Honorable William J. Lafferty, III, U.S. Bankruptcy Judge for the Northern District of California, sitting by designation.

-1-

Appellant Retha Green ("Appellant")[3] appeals the bankruptcy court's order disallowing Appellant's claim in the chapter 11[4] case of Brotman Medical Center, Inc. ("Debtor"). We REVERSE.

**FACTS**

Appellant was the mother of Linda Sue Brown ("Brown"), a developmentally disabled adult. Debtor is a general acute care hospital. In July 2006, Brown died after receiving medical treatment at Debtor's facilities.

Appellant later sued Debtor, its doctors and nurses in California Superior Court alleging that the defendants had committed a battery against Brown and abused her as a "dependent adult" as that term applies in the California Elder Abuse and Dependent Adult Civil Protection Act.[5] In a First Amended Complaint ("FAC") filed August 27, 2007, Appellant sought to recover $5 million in compensatory damages and $25 million in punitive damages for "Common Law Battery," $250,000 for Brown's pain and suffering, Brown's medical costs, and $25 million in punitive damages for "Abuse of [a] Dependent Adult."

The defendants, including Debtor, filed demurrers. On October 25, 2007, before the hearing on the demurrers, Debtor

---

[3] Appellant appeals by and through a guardian ad litem, Rosslyn Diamond.

[4] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, or to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[5] Appellant alleges Debtor fabricated a medical condition for Brown, provided her with unnecessary blood transfusions, performed unnecessary and improperly consented-to surgery, and provided insufficient post-surgical monitoring. At the same time, Appellant alleges Brown suffered from a different, life-threatening condition, which went untreated by Debtor, killing her while in Debtor's care.

-2-

filed a chapter 11 bankruptcy petition. When Debtor filed its schedules of liabilities in the bankruptcy court on December 26, 2007, it indicated $34,929,926.87 was owed to "Creditors Holding Unsecured Nonpriority Claims." Brown was listed among those creditors, though because of the state court litigation, the "total amount of claim" for Brown was listed as "unknown," and was not included in the total amount owed to unsecured creditors.

The state court held a hearing on October 30, 2007, and sustained the demurrers, but granted Appellant twenty days to amend the FAC. Appellant moved for reconsideration but, in early December 2007, the demurrers were again sustained with twenty days' leave to amend ("Twenty Day Period").

Knowing she only had twenty days to amend the FAC, and recognizing Debtor's bankruptcy filing had imposed an automatic stay, Appellant moved for relief from the stay in Debtor's bankruptcy case on December 14, 2007 ("First Stay Motion"). In a memorandum filed in support of the First Stay Motion, Appellant explained the Common Law Battery and Abuse of Dependent Adult causes of action she was asserting against Debtor in state court, and outlined the facts she believed supported those claims. Appellant requested that the bankruptcy court grant her relief "to continue litigation of the pending state court lawsuit against Debtor . . . including the filing of a second amended complaint therein." A copy of the FAC was attached as an exhibit to the First Stay Motion.

Debtor opposed Appellant's First Stay Motion on December 26, 2007. However, in its opposition, Debtor indicated it would agree to stay relief if Appellant waived all potential claims against

Debtor, sought satisfaction of her claims solely from "applicable insurance proceeds, if any," and if the bankruptcy court "barred [Appellant] from filing a proof of claim in the Debtor's bankruptcy case."

Before the bankruptcy court considered the First Stay Motion, Appellant filed a Second Amended Complaint with the state court on December 31, 2007, as the Twenty Day Period was about to expire.[6] Appellant's Second Amended Complaint explained that Debtor is "not listed as a named defendant [in the Second Amended Complaint] because the bankruptcy automatic stay pursuant to 11 U.S.C. [§] 362(a)(1) prevents the same." Rather, Appellant "reserve[d] the right to name [Debtor] as a defendant in this action upon obtaining relief from the automatic stay."

The bankruptcy court issued a tentative ruling on Appellant's First Stay Motion on February 5, 2008. That tentative ruling stated in part that:

> Court agrees that, if and when the merits of movant's claims need to be resolved, state court is the appropriate forum; however, nothing contained in the motion explains why relief from stay needs to be granted now. If movant were prepared to waive any claims against the estate and proceed only against insurance coverage, continued prosecution of this litigation would be less likely to distract the debtor and its principals from its reorganization efforts (and the court could, therefore, be inclined to grant such relief). Absent such a waiver, however, it would adversely impact the debtor's reorganization efforts if this litigation were to move forward at this juncture.

Tentative Ruling on Motion for Stay Relief, Feb. 5, 2008.

---

[6] In the Second Amended Complaint, Appellant further explained her reasoning for the Common Law Battery and Abuse of Dependent Adult claims, and added a Medical Malpractice claim.

At the February 5, 2008, hearing on Appellant's First Stay Motion, Appellant's lawyer explained that, because Appellant was asserting intentional tort claims against Debtor, it was possible that such claims would not be covered by Debtor's insurance. Appellant could not, therefore, agree to waive her claims against Debtor and proceed solely against insurance coverage. The bankruptcy court denied Appellant's First Stay Motion without prejudice in an order entered that same day. The bankruptcy court thereafter established an April 8, 2008 deadline for filing proofs of claim in Debtor's bankruptcy case.

Appellant appealed the bankruptcy court's denial of her First Stay Motion to the Bankruptcy Appellate Panel. She did not file a formal proof of claim by the April 8, 2008, bar date. Appellant's attorney would later explain that he incorrectly understood Appellant could only file a formal proof of claim in Debtor's case after she secured a judgment against Debtor. Because Appellant filed no proof of claim by the claims bar date, and could therefore receive no distribution in Debtor's bankruptcy case, Debtor argued to the BAP that the appeal of the First Stay Motion was moot.

The Panel decided the bankruptcy court did not abuse its discretion in denying Appellant's First Stay Motion, and affirmed its order. However, in its Memorandum decision, the Panel rejected Debtor's mootness argument. The Panel explained that Appellant's FAC sufficiently alleged a "claim" for purposes of the Bankruptcy Code, and that Appellant could assert that claim in Debtor's bankruptcy case before receiving a judgment against Debtor in state court. Moreover, the Panel noted that Appellant's

-5-

First Stay Motion, "which included a copy of the complaint, may be sufficient to provide notice of her claim and may serve as an informal proof of claim." Green v. Brotman Med. Ctr., Inc. (In re Brotman Med. Ctr., Inc.), BAP no. CC-08-1056, slip. op. at 10 (9th Cir. BAP, August 15, 2008).

Appellant filed a second motion for relief from the automatic stay in Debtor's bankruptcy case on September 10, 2008 ("Second Stay Motion"). Debtor opposed Appellant's motion. On October 30, 2008, the bankruptcy court denied Appellant's Second Stay Motion, adopting extensive findings of facts and conclusions of law prepared by Debtor's counsel in doing so. Among these is a finding that Debtor does not have insurance to defend against intentional torts.

Debtor filed a Second Amended Chapter 11 Plan (the "Plan") and Disclosure Statement on November 3, 2008. The Disclosure Statement indicated that, to date, proofs of claim for $29,728,025.41 in unsecured claims had been submitted, and Debtor estimated the total allowable unsecured claims against the bankruptcy estate to be approximately $18-22 million. Thus, even for properly submitted proofs of claim, Debtor's estimate of allowable claims only included those which it considered to be "[un]objectionable as [f]iled."

The Plan provided for the creation of a Creditor Trust ("Trust") to oversee plan distributions to allowed Class 4 claims, which included "General Unsecured Claims," such as Appellant's.

It also provided that $7.5 million[7] was available for the benefit of such claims and any "small claims." The Plan gives the Trust "the sole right and authority to [f]ile, settle, compromise, withdraw or litigate to judgment objections to Class 4 Claims." It also recognized that pre-confirmation wrongful death claimants were to be enjoined by the discharge injunction "from commencing or continuing any action to collect such Claim except in conformity with . . . ADR Procedures [outlined in Exhibit H to the Plan]." Per the Plan, if Debtor and a claimant participated in a good faith mediation effort without reaching a settlement, the claimant could then receive relief from the injunction.

The Plan was confirmed March 30, 2009, and the Trust was created. On May 11, 2009, Appellant filed a formal proof of claim in Debtor's chapter 11 case ("Formal POC"). On the Formal POC form, Appellant checked a box indicating the form amended a previously filed "Informal Claim," and that the informal claim was a "Motion for relief from stay: Filed on: 12/14/07." Appellant identified the claim's amount as "[greater than] $250,000.00," and stated the basis for the claim was a "[w]rongful death incident to battery & abuse of dependent adult." In a footnote to the Formal POC, Appellant explained that "[a]n informal claim was made by filing [a] motion for relief from stay on 12/14/07. This claim amends with a formal claim. In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1381 (9th Cir. 1985); [Sambo's Rests., Inc. v. Wheeler ()In re Sambo's Rests., Inc.[)], 754 F.2d 811, 815 (9th Cir.

_____

[7] Of this amount, $3.5 million was cash provided from Debtor to the Trust. The remaining $4 million was in the form of an unsecured note issued by Debtor for the benefit of allowed Class 4 claims.

-7-

1985)."

Attorneys for the Trust contacted Appellant's counsel about the Formal POC on June 19, 2009, indicating the Trust disputed the claim, and directing Appellant to pursue the ADR procedures set forth in Exhibit H to the Plan. The Trust's attorneys also advised that Appellant's claim could be quickly resolved if she would agree to limit her recovery to available insurance proceeds and would not seek recovery from the Trust.

On July 5, 2009, Appellant responded to the Trust, indicating she was willing to participate in the mediation program. Appellant also indicated she would waive her right to receive distributions from the Trust if she was paid $250,000 from available insurance coverage.

After not hearing from the Trust for several months, Appellant initiated contact to verify the status of her claim in the ADR process. The Trust informed Appellant that her claim was being handled by another law firm which, ultimately, directed Appellant to yet another law firm. That firm put Appellant in contact with the party overseeing the ADR process, Judicate West. While Judicate West contacted Appellant in October 2009, and decided on an acceptable mediator, no mediation date was scheduled because it needed to verify dates with the Trust. No mediation dates were ever scheduled through this process.

The Trust finally contacted Appellant in March 2010, requesting a status update. Appellant responded that she had heard nothing about her claim since her contact with Judicate West in October 2009. After an informal settlement discussion between the Trust and Appellant, Appellant rejected the Trust's offer to

-8-

settle her claim for $75,000 to $100,000. The Trust again offered to stipulate to relief from stay for Appellant if she would agree to limit her recovery to available insurance coverage and to withdraw "the proof of claim presently on file." On April 27, 2010, the Trust notified Appellant that, if she did not agree to such a stipulation within the next ten days, it would file an objection to Appellant's claim with the bankruptcy court.

The matter did not settle and, on July 12, 2010, the Trust filed a motion asking the bankruptcy court to disallow Appellant's claim. In support of its motion, the Trust asserted Appellant was barred from pursuing her claim by the Plan discharge and injunction, and that Appellant had not "avail[ed] herself" of the ADR process through which relief from the injunction could be obtained. The Trust asserted that Appellant's claim should be disallowed because no proof of claim was filed until after the bar date. Appellant opposed the Trust's motion, arguing that her two stay relief motions were sufficient to constitute an informal proof of claim.

An initial hearing on the Trust's motion was conducted in the bankruptcy court on August 11, 2010. Rather than discussing the informal proof of claim issue, the bankruptcy court used that hearing to advance the ADR process by committing the parties to continue mediation. The Trust's claim objection hearing was continued until after the parties met for mediation.

At about the same time it filed its motion for disallowance of Appellant's claim, the Trust made its first distribution to Class 4 claimants. In a May 25, 2010, status report to the bankruptcy court, Debtor stated that, in spite of the fact that

-9-

the Trust was "still analyzing, reconciling and resolving several Class 4 Claims," it would make its first distribution to Class 4 claimants "within the next few months." At the August 2010, hearing on the Trust's objection to Appellant's claim, the Trust represented that Appellant's claim was "one of the remaining open claims that we need to resolve in order to make a distribution to creditors." Hr'g Tr. 3:9–11, Aug. 11, 2010. By November 23, 2010, Appellant held the sole remaining contested claim.

Apparently, the Trust decided it did not "need to resolve" Appellant's claim before making a distribution to other Class 4 claimants; it distributed $1,463,056.62 to such claimants by October 30, 2010. At the same time, the Trust established a $250,000 "reserve" for the potential payment of Appellant's claim. As of March 31, 2011, the Trust had made a second distribution, and the aggregate distribution to Class 4 claimants was $3,482,365.30.

Appellant and Debtor participated in an unsuccessful mediation on January 19, 2011. The bankruptcy court reconvened the hearing on the Trust's claim objection on January 26, 2011; the only remaining issue was the timeliness of Appellant's claims in the bankruptcy case.

At the hearing, the bankruptcy court expressed concern that Appellant had never filed a motion to have her First Stay Motion deemed an informal proof of claim. Appellant disputed she was required to make such a motion. While the bankruptcy court insisted there was such a requirement, it conceded it could not cite Appellant to authority from the bench for the proposition. The bankruptcy court then sustained the Trust's claim objection on

-10-

the basis that Appellant had missed the claims bar date because she had not filed a motion to have her First Stay Motion considered an informal proof of claim.

Counsel for Appellant pressed the bankruptcy judge to explain the basis for her ruling in more detail. The bankruptcy court declined, directed the Trust's attorney to draft an order disallowing Appellant's claim, and indicated that "the order that I sign will include my reasons as stated on the record." Hr'g Tr. 12:21-22, Jan. 26, 2011 (emphasis added). The only reason stated on the record for the court's decision to disallow Appellant's claim was that the court would not "make rulings unless somebody requests them in a motion," Appellant "never sought that relief," and "there was a bar date [and Appellant] did not file by the bar date." Hr'g Tr. 11:5-7 and 11:25-12:1, Jan. 26, 2011.

The bankruptcy court entered an order disallowing Appellant's claim on February 9, 2011. That order, drafted by the Trust's attorneys, provides that "[Appellant] has never moved this Court for leave to file a late proof of claim, for a finding that her May 2009[,] Proof of Claim relates back to an earlier informal proof of claim or for a finding that her first motion for relief from stay constitutes an informal proof of claim." However, in spite of the bankruptcy court's indication at the hearing that its order would be based solely on the reasons stated on the record, the order also provides, "[t]o the extent that [Appellant's] opposition to the [Trust's claim objection] may be construed as a request for [consideration as an informal proof of claim], these requests are denied." The attorney-drafted order then lists a litany of other reasons why the Trust's claim objection was

-11-

sustained, including that Appellant's case was distinguishable from other informal proof of claim cases on the evidence; "[t]here is nothing about the conduct of [Appellant] in this case that evidences an intent to take actions that were the functional equivalent of filing a proof of claim"; Appellant "took steps to avoid having her claim adjudicated in a federal forum"; and Appellant "sought only to preserve her right to proceed with the Prepetition State Court Action."

Appellant filed a motion asking the bankruptcy court to reconsider its February 9 order; the motion was denied on March 11, 2011 because, in the court's view, the motion simply restated the arguments rejected by the court in its February 9, 2011, order. Appellant filed a timely notice of appeal on March 22, 2011

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Whether the bankruptcy court erred in determining that Appellant's First Stay Motion did not meet the requirements for an informal proof of claim.

Whether the bankruptcy court abused its discretion in disallowing Appellant's claim on the grounds that it was untimely.

**STANDARDS OF REVIEW**

We review a bankruptcy court's decision to allow or disallow a proof of claim for an abuse of discretion. Bitters v. Networks Elec. Corp. (In re Networks Elec. Corp.), 195 B.R. 92, 96 (9th Cir. BAP 1996) ("the bankruptcy court has sole jurisdiction and

-12-

discretion to allow or disallow the claim under federal law.").

The existence of an informal proof of claim is a question of law reviewed de novo. Hi-Tech Commc'ns Corp. v. Poughkeepsie Bus. Park, LLC (In re Wheatfield Bus. Park, LLC), 308 B.R. 463, 465 (9th Cir. BAP 2004) (citing Dicker v. Dye (In re Edelman), 237 B.R. 146, 150 (9th Cir. BAP 1999)). De novo review requires the Panel to independently review an issue, without deference to the bankruptcy court's conclusions. See Cal. Franchise Tax Board v. Wilshire Courtyard (In re Wilshire Courtyard), 459 B.R. 416, 423 (9th Cir. BAP 2011) (citing First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006)).

In applying an abuse of discretion test, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the bankruptcy court identified the correct legal rule, we then determine whether its "application of the correct legal standard [to the facts] was (1) illogical, (2)implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted). If the bankruptcy court did not identify the correct legal rule, or if its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, the bankruptcy court has abused its discretion. Id.

## DISCUSSION

### I.

**There is no procedural prerequisite that a creditor file a motion to have the bankruptcy court consider an informal proof of claim.**

At the January 26, 2011, hearing on the Trust's motion to disallow Appellant's claim, the bankruptcy court declined to consider the merits of Appellant's arguments that her First Stay Motion satisfied the requirements for a timely-filed informal proof of claim. The bankruptcy court instead insisted Appellant was required to first file a motion with the court to consider such documents as an informal proof of claim. Because Appellant had not done so, the bankruptcy court granted the Trust's request to disallow Appellant's tardy formal proof of claim.

In making this decision, the bankruptcy court abused its discretion because it applied an incorrect legal rule. There is no requirement in the Code, Rules, or case law that a creditor must ask the bankruptcy court to determine that an informal proof of claim exists before that claim is allowed. To the contrary, bankruptcy courts routinely determine the existence of informal proofs of claims in proceedings initiated by parties other than the creditor found to hold such a claim. See, e.g., In re Pizza of Hawaii, Inc., 761 F.2d at 1374 (lack of a formal proof of claim raised, in the first instance, by debtor on appeal); Pac. Res. Credit Union v. Fish (In re Fish), 456 B.R. 413 (9th Cir. BAP 2011) (proof of claim issue raised through a debtor's objection to a claim as late-filed).

In this case, there was no procedural impediment preventing the bankruptcy court from considering whether Appellant's filings

-14-

constituted an informal proof of claim, even though Appellant had not filed a motion with the court asking it to do so.  The court's disallowance of the claim based on the "requirement" that Appellant first make such a motion was in error.

## II.

### Appellant's First Stay Motion constituted an informal proof of claim.

Though the bankruptcy court did not discuss it at the hearing, in its February 9, 2011, order sustaining the Trust's objection to Appellant's claim, the court indicated that, even if Appellant was not required to file a motion to have the First Stay Motion considered an informal proof of claim, she did not meet the informal proof of claim requirements.  The order then provided various reasons why the First Stay Motion was not an informal proof of claim.

As counsel for the Trust conceded at oral argument, the bankruptcy court's order merely adopted the findings of fact and conclusions of law drafted by counsel for the Trust.  As a result, that order must be reviewed with special scrutiny.  See Anderson v. City of Bessemer City, 470 U.S. 564, 571-72 (1985) (recognizing "the potential for overreaching and exaggeration on the part of attorneys preparing findings of fact when they have already been informed that a judge has decided in their favor"); Jess v. Carey (In re Jess), 169 F.3d 1204, 1208-09 (9th Cir. 1999) (recognizing that the wholesale adoption of a party's proposed findings by a trial court is a "frequently criticized" and disfavored practice); Cinevision Corp. v. City of Burbank, 745 F.2d 560, 581 n.30 (9th Cir. 1984) (finding that, where a trial court engages in the

"disfavored practice" of adopting a prevailing party's proposed order, an appellate court "must give the order 'special scrutiny.'").

Based on this record, it appears that the Trust, knowing it was the prevailing party, engaged in inappropriate overreaching and exaggeration in drafting the order adopted by the bankruptcy court. Cf. Anderson, 470 U.S. at 572. At the January 26, 2011, hearing on the Trust's objection, the bankruptcy court sustained that objection solely because Appellant had not first moved to have the court consider the First Stay Motion as an informal proof of claim. While the bankruptcy court instructed counsel that the Trust-drafted order was to recite the court's reasons for its ruling "as stated on the record," the order submitted by the Trust's attorneys and entered by the court included extensive findings and conclusions beyond those addressed by the court on the record. In particular, the order provides that, because the facts of this case are not a replica of those in other informal proof of claim cases, Appellant did not "evidence[] an intent to take actions that were the functional equivalent of filing a proof of claim." In addition, while not mentioned by the court at the hearing, the order intimated that Appellant could only have properly demonstrated an informal proof of claim by taking steps to have her claim adjudicated in a "federal forum."

These legal standards, adopted by the bankruptcy court in the order, however, are not those applicable to determine whether an informal proof of claim exists. The informal proof of claim doctrine is well-established in the Ninth Circuit. Indeed, this Panel recently addressed the rules for informal proofs of claims

-16-

in In re Fish, 456 B.R. at 413, where, as here, a creditor, among other filings, relied upon pre-claims-bar-date stay relief motions as an informal proof of claim.

In essence, a creditor may establish the existence of a timely proof of claim by amending a pre-claims-bar-date "informal proof of claim" by filing a post-claims-bar-date formal proof of claim. In re Fish, 456 B.R. at 417 (citing In re Edelman, 237 B.R. at 154). To be effective as an informal proof of claim, a document must satisfy several conditions. In re Edelman, 237 B.R. at 155. The creditor must offer the bankruptcy court proof of the "(1) presentment of a writing; (2) within the time for the filing of claims; (3) by or on behalf of the creditor; (4) bringing to the attention of the court; (5) the nature and amount of a claim asserted against the estate." In re Fish, 456 B.R. at 417[8] (citing In re Edelman, 237 B.R. at 155). However, bankruptcy courts should be "liberal" in the kind of documentation accepted as an informal proof of claim. In re Sambo's Rests., Inc., 754 F.2d at 816.

A creditor's request for relief from the automatic stay, with accompanying attachments, meets the informal proof of claim "presentment of a writing" requirement. See In re Pizza of Hawaii, Inc., 761 F.2d at 1381; In re Fish, 456 B.R. at 418. In addition, if a creditor requests stay relief to join a debtor as a defendant in a civil action, such action is, itself, sufficient to show the creditor "inten[ds] to hold the estate liable." In re

---

[8] Fish's fifth requirement — that the claimant state "the nature and amount of a claim asserted against the estate" — is sometimes formulated as a requirement that the claimant's writing indicate that the claimant "intend[s] to hold the estate liable." In re Pizza of Hawaii, Inc., 761 F.2d at 1381.

-17-

*Pizza of Hawaii, Inc.*, 761 F.2d at 1381. Documents attached to a stay relief request that detail the nature and contingent amount of the claim asserted against the debtor only further demonstrate the creditor's intent to hold the estate liable. *Id.* And where a claim is based on a pending lawsuit, an inexact claim amount is sufficient to demonstrate the "amount of a claim asserted against the estate." *Id.*; *In re Fish*, 456 B.R. at 418.

Appellant provided the bankruptcy court, and the Panel on appeal, with an extensive evidentiary record to support the existence of its informal proof of claim. For these purposes, however, only those materials presented, and brought to the bankruptcy court's attention, before the claims bar date, April 8, 2008,[9] are relevant. *In re Fish*, 456 B.R. at 417.

When Debtor filed its October 25, 2007, chapter 11 petition, Appellant had filed a complaint against Debtor in state court. Soon after Debtor's bankruptcy filing, however, the state court sustained Debtor's demurrer to the FAC, giving Appellant twenty days to amend the complaint. Yet, Appellant could not amend the complaint against Debtor because of the automatic stay invoked by

[9] Much of the evidentiary record, while clearly indicating an intent to hold Debtor liable for Appellant's claim, was not presented to the bankruptcy court before the claims bar date. For example, the record documents repeated offers by Debtor to stipulate to stay, injunction, and discharge relief in exchange for Appellant's agreement to waive Debtor's liability and to only pursue insurance. While Appellant's rejection of those offers may evidence her intent to hold Debtor liable, many of the offers and rejections were made after the claims bar date. In addition, Appellant's Second Amended Complaint clearly indicates Debtor was not a named defendant in that complaint solely because of the automatic stay, and that, upon receiving stay relief, Appellant planned to pursue Debtor. Again, while this evidences Appellant's intent to hold Debtor liable, and while the state court had the complaint prior to the claims bar date, there is no indication the complaint was presented to the bankruptcy court before April 8, 2008.

-18-

Debtor's bankruptcy filing. See § 362(a)(1) (indicating the automatic stay prevents the commencement or continuation of a pre-petition judicial action against a debtor).

On December 14, 2007, Appellant filed the First Stay Motion with the bankruptcy court, with an accompanying memorandum, and a copy of her FAC. Included in Appellant's memorandum was a description of the causes of action she asserted against Debtor, and the facts she believed support those causes of action.[10] By filing the First Stay Motion, with its accompanying attachments, Appellant presented a sufficient writing to the bankruptcy court prior to the date for timely filing a proof of claim. Appellant, the creditor seeking to establish an informal proof of claim, brought her claim to the bankruptcy court's attention through the First Stay Motion. The motion and accompanying memorandum clearly explain the nature of Appellant's claim against Debtor for common law battery and abuse of a dependent adult, and, by stating she will pursue Debtor upon receiving stay relief, these documents

---

[10] Debtor argues that Appellant's filing of the Second Amended Complaint rendered the FAC a legal nullity, insufficient to establish an informal proof of claim. Even if the FAC is a nullity for purposes of pleading under state law, however, the bankruptcy court and Panel need not rely solely upon the FAC as Appellant's informal proof of claim. Appellant's First Stay Motion is also sufficient to constitute an informal proof of claim. Regardless of its legal effect in the state court litigation, the FAC attached to the First Stay Motion can be considered to supplement the motion, providing information on the nature and amount of the claim Appellant intended to pursue against Debtor once stay relief was granted. Indeed, as the Panel's August 15, 2008, unpublished decision in this case observes, "although [Appellant] has not obtained a judgment against the debtor in the state court action, the causes of action asserted in the complaint constitute claims within the meaning of § 101(5)(A)." Green v. Brotman Med. Ctr., Inc. (In re Brotman Med. Ctr., Inc.), BAP No. CC-08-1056 slip op. at 8 (9th Cir. BAP Aug. 15, 2008) (citing In re Dow Corning Corp., 211 B.R. 545, 560 (Bankr. E.D. Mich. 1997)).

-19-

evidence Appellant's intent to hold Debtor liable for her claim. In addition, the FAC attached to the motion further documented her claim against Debtor, her intention to hold Debtor liable for the claim, and the potential amounts of that claim, contingent on the litigation process.

Debtor responded to Appellant's First Stay Motion on December 26, 2007. In that response, Debtor indicated a willingness to stipulate to stay relief in exchange for Appellant waiving all potential claims against Debtor, and agreeing to only pursue insurance proceeds, if any. The bankruptcy court adopted that concept, and, in its February 5, 2008, tentative ruling on Appellant's First Stay Motion, indicated it would be inclined to grant stay relief if Appellant would waive any claims against Debtor and proceed only against insurance coverage. Debtor's suggestion, and the bankruptcy court's subsequent adoption of this "claim waiver" concept further evidenced that, well before the claims bar date, Debtor and the bankruptcy court were presented adequate information to indicate Appellant intended to hold Debtor liable for the claims asserted in her FAC.

When Appellant filed her Formal POC on May 11, 2009, she indicated it amended the "informal claim," i.e., her December 14, 2007, First Stay Motion. Appellant's First Stay Motion and accompanying documents were sufficient to put Debtor and the bankruptcy court on notice that she intended to assert a claim against Debtor, and to satisfy the informal proof of claim requirements. Debtor was keenly aware of this, as evidenced by its attempts to persuade Appellant to waive that claim in exchange for Debtor's agreement to allow the state court litigation to

continue.

## III.

**Allowing Appellant's proof of claim does not prejudice the Trust.**

The Trust argues that Appellant's informal proof of claim should not be allowed because it would prejudice the Trust and other creditors. We disagree.

Even where a creditor satisfies the informal proof of claim requirements, a bankruptcy court may disallow an amended proof of claim if allowing the claim would prejudice the debtor or others. See In re Sambo's Rests., Inc., 754 F.2d at 816-17. Among the factors used to determine potential prejudice are "bad faith or unreasonable delay in filing the amendment, impact on other claimants, reliance by the debtor or other creditors, and change of the debtor's position." Wall Street Plaza, LLC v. JSJF Corp. (In re JSJF Corp.), 344 B.R. 94, 102 (9th Cir. BAP 2006) (quoting Roberts Farms Inc. v. Bultman (In re Roberts Farms Inc.), 980 F.2d 1248, 1251-52 (9th Cir. 1992)). The burden of identifying actual prejudice that would result from allowing an amendment is on the party objecting to the amendment. See In re Sambo's Rests., Inc., 754 F.2d at 817.

There is no evidence in this case that Appellant's conduct constitutes bad faith. It has not been disputed that Appellant missed the claims bar date because her lawyer misunderstood the nature of the term "claim" in the bankruptcy lexicon. Until the appeal of her First Stay Motion was decided by the BAP on August 15, 2008, Appellant operated under the mistaken impression that she did not yet hold a claim for bankruptcy purposes and could not file a proof of claim until she secured a judgment against Debtor.

-21-

Of course, under § 101(5)(A), Appellant likely held a contingent claim against Debtor as soon as her state law causes of action arose.

By the time Appellant filed her Formal POC in May 2009 amending her informal proof of claim, Debtor's chapter 11 plan had been confirmed. Debtor's Disclosure Statement estimated the total allowable claims against its bankruptcy estate was approximately $18-22 million. That estimate, however, did not include an amount for "objectionable" claims, regardless of whether a proof of claim had been filed for those claims or not. Because Debtor continued to object to Appellant's claim, it is unlikely the Disclosure Statement's estimate of allowable claims would have included an amount for her claim even if she had met the claims bar date. It is therefore unlikely that either Debtor or any other claimants relied on the lack of Appellant's claim in the confirmation process.[11]

Even so, the Trust argues that, if Appellant's claim is allowed at this point, other claimants will potentially be impacted because distributions have been made to those claimants that may need to be disgorged if Appellant's claim is sufficiently large. However, the first of those distributions was made at least a year after Appellant filed her Formal POC. In other words, the Trust was fully aware of Appellant's claim at the time

---

[11] At the same time, the Disclosure Statement included a figure for total submitted claims, whether objectionable or not, which would have included Appellant's claim had she submitted it before the claims bar date. However, the Trust has not indicated that unsecured creditors relied upon that figure, rather than the estimated allowable claims amount, when calculating their potential pro rata distribution and deciding to vote in favor of the Plan.

-22-

it made the distributions. While the Trust's reports initially represented to the bankruptcy court that it needed to "resolve [Appellant's claim] in order to make a distribution to creditors," the Trust instead established a reserve of $250,000 on account of Appellant's claim, which was the exact amount Appellant had previously indicated she would accept to settle her claim. If claimants will be impacted by allowing Appellant's proof of claim at this point, it is because the Trust chose to proceed in making distributions in the face of Appellant's unsettled claim.[12] While waiting to make distributions would have delayed payment to claimants, prejudice requires there to be a "legal detriment to the party opposing." In re JSJF Corp., 334 B.R. at 102. There is no indication in the record that a delay in distributions in this case was a legal detriment to any party, let alone to the Debtor.

Finally, the Trust has not changed its position based on the absence of a timely claim from Appellant. Rather, since Appellant filed the FAC in state court, Debtor and the Trust have attempted to settle Appellant's claim by securing her agreement to waive Debtor's liability. The Trust also delayed making distributions under the Plan until establishing a reserve in an amount it likely believed was sufficient to settle Appellant's claim. In short, Appellant's claim was no surprise to Debtor or the Trust, and it has not been shown that allowing her claim would prejudice Debtor, the Trust, or others.

---

[12] Of course, at this point, any discussion of prejudice to other creditors is largely hypothetical. Until Appellant's claim is liquidated, there is no way to determine whether other unsecured creditors will be impacted by allowance of Appellant's claim or not.

**CONCLUSION**

Because it applied an incorrect legal rule in making its decision, the bankruptcy court abused its discretion when it granted the Trust's motion to disallow Appellant's proof of claim. Based upon our independent review, we conclude Appellant's First Stay Motion, with its accompanying memorandum and exhibits, was sufficient to satisfy the requirements for a timely-filed informal proof of claim. Appellant's Formal POC served to amend that informal proof of claim. The Trust has not identified any actual prejudice that will result from allowing Appellant's proof of claim as timely.

The order of the bankruptcy court is REVERSED.