NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP Nos. CC-11-1269-PaMkCa and |
| | )        CC-11-1272-PaMkCa |
| MARLOW HOWARD HOOPER and | )     (Related Appeals) |
| MONIQUE LORI HOOPER, | ) |
| | ) Bk. No. 08-24094-MJ |
| Debtors. | ) |
| _____ | ) Adv. No. 09-01275-MJ |
| | ) |
| MARLOW HOWARD HOOPER; | ) |
| MONIQUE LORI HOOPER, | ) |
| | ) |
| Appellants, | ) |
| | ) **M E M O R A N D U M**[1] |
| v. | ) |
| | ) |
| KARL T. ANDERSON, Chapter 7 | ) |
| Trustee; ETS SERVICES, LLC; GMAC | ) |
| MORTGAGE, LLC; MORTGAGE ELECTRONIC | ) |
| REGISTRATION SYSTEMS, INC., | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and submitted on January 19, 2012
at Pasadena, California

Filed - February 14, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Meredith A. Jury, Bankruptcy Judge, Presiding

---

Appearances:    W. Derek May of the Law Offices of Stephen R. Wade, P.C. argued for appellants Marlow and Monique Hooper; Adam Starr of Greenberg Traurig, LLP argued for appellee GMAC Mortgage, LLC.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1

-1-

Before: PAPPAS, MARKELL and CASE,[2] Bankruptcy Judges.

Chapter 7[3] debtors Marlow Hooper and Monique Hooper (the "Hoopers") appeal the bankruptcy court's orders approving a compromise settling litigation pending between Karl T. Anderson (the chapter 7 "Trustee") and creditor GMAC Mortgage, LLC ("GMAC"),[4] overruling Hoopers' objection to GMAC's claim, and denying reconsideration of those orders.  We AFFIRM.

**FACTS**

In 2006, the Hoopers purchased a property in Rancho Cucamonga, California (the "Property").  To finance this purchase, Marlow Hooper[5] borrowed $1 million from Greenpoint.  The loan was evidenced by an adjustable rate note dated April 20, 2006 (the "Note").  The correct street address of the Property is listed on the Note.

---

[2] The Honorable Charles G. Case II, United States Bankruptcy Judge for the District of Arizona, sitting by designation.

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[4] Besides GMAC, the other defendants named in the adversary proceeding were ETS Services, Inc. ("ETS"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Greenpoint Mortgage Funding, Inc. ("Greenpoint") and Fidelity National Title, Inc. ("Fidelity").  Although ETS and MERS are named as appellees in this appeal, they did not file briefs or appear at oral argument. With the exception of Fidelity, the appellees appear to have acted in concert.  Consequently, we refer to the appellees collectively either as GMAC or the GMAC Parties.

[5] The Note and two deeds of trust discussed herein were executed by Marlow Hooper alone; they do not bear the signature of his wife and co-debtor, Monique Hooper.  According to GMAC's motion for relief from stay, discussed below, Monique Hooper was not a co-borrower on the Note.

-2-

At the same time he executed the Note, Marlow Hooper executed a Deed of Trust (the "2006 DOT") in favor of Greenpoint. The 2006 DOT lists the correct address of the Property; however, the legal description for the Property in the 2006 DOT was incorrectly listed as "Lot 17 Tract No. 16332," instead of the correct description of "Lot 19 Tract No. 16332."[6] The 2006 DOT was recorded in the Official Records of San Bernadino County on May 1, 2006.

On September 12, 2008, acting without obtaining a new signature from Marlow Hooper, Greenpoint recorded a second, modified version of the 2006 deed of trust (the "2008 DOT"). In the 2008 DOT, the Property is correctly described as "Lot 19 Tract No. 16332."[7]

The Hoopers filed a chapter 7 bankruptcy petition on October 15, 2008. In their original schedule D, they listed an undisputed, noncontingent liquidated claim of $1,077,217.96 in favor of GMAC for a mortgage and deed of trust on the Property. The Hoopers also claimed a homestead exemption on the Property in schedule C. Trustee did not challenge the Hoopers' exemption claim, nor seek to administer the Property. Instead, on December 2, 2008, Trustee filed a "no-asset report."

In a motion originally filed in the bankruptcy case on December 11, 2008, which was amended on December 31, 2008, GMAC

---

[6] It is not disputed that "Lot 19 Tract No. 16332" is the correct legal description of the Property.

[7] There was also an alleged disparity between the 2006 and 2008 DOTs regarding the assessor's number. However, this feature of the documents was not raised as a significant issue in this appeal.

-3-

sought relief from the automatic stay so that it could foreclose on the Property. Attached to these motions were copies of the 2006 DOT and Note. The Hoopers did not contest the stay relief motions, and the bankruptcy court entered its order terminating the stay in favor of GMAC on January 7, 2009. This order was not appealed.

The bankruptcy court granted the Hoopers a discharge on February 3, 2009, and the bankruptcy case was closed on February 19, 2009.

The Hoopers contend that they were unaware of the existence of the 2008 DOT before their discharge was granted. On March 31, 2009, the Hoopers filed a motion to reopen their case to amend their schedules "to include previously unidentified assets." The case was reopened by order entered by the bankruptcy court on April 30, 2009.

**The Compromise**

After he became aware of the discrepancy in the documents, Trustee initiated an adversary proceeding against GMAC, ETS, MERS, Greenpoint and Fidelity on June 11, 2009. In the complaint, Trustee sought avoidance of the 2008 DOT. In addition, he alleged that the 2006 DOT did not "properly encumber" the Property because it contained an incorrect legal description.[8] According to Trustee, even if the 2008 DOT was authorized by the parties, which Trustee disputed, because it was recorded on September 12, 2008, within ninety days of the filing of the Hoopers' bankruptcy

---

[8] Although the complaint and subsequent summary judgment motion asserted that the 2006 DOT did not properly encumber the Property, Trustee did not seek to avoid the 2006 DOT.

-4-

petition it could be avoided as a preference under § 547(b). The Hoopers were not named as parties, and did not intervene, in the adversary proceeding.

Trustee filed a motion for summary judgment on January 4, 2010, arguing that there were no triable issues of material fact and that, as a matter of law, "the unauthorized and concealed recording of the 2008 DOT on September 12, 2008, thirty-three days before the filing of the bankruptcy petition, was an avoidable preference under § 547." A flurry of objections from the GMAC Parties, replies from Trustee, supplemental briefing, and multiple continuances of the hearing on summary judgment followed.

Trustee then moved to sell the Property on August 25, 2010, pursuant to § 363(b) and (f) with valid liens to attach to the net proceeds of the sale. The sale motion disclosed that there was a pending compromise between GMAC and Trustee. The Hoopers objected on September 7, 2010, arguing that Trustee was improperly including some personal property items (a refrigerator and several flat screen televisions) in the sale, and because the estimated distribution to unsecured creditors from the sale was to be only $10,000. GMAC did not oppose the sale motion. The bankruptcy court approved the sale on November 24, 2010. The bankruptcy court overruled the Hooper's objection, and the Hoopers did not appeal the order approving the sale. The sale closed, and Trustee is holding $555,911 in net proceeds of the sale.

As noted above, Trustee and GMAC had reached a tentative settlement agreement to resolve the adversary proceeding and to distribute the house sale proceeds. On December 21, 2010, Trustee filed a Motion for Order Authorizing Trustee's Global Compromise

[of] Adversary Proceeding (the "Compromise Motion").  The material terms of the proposed compromise and settlement agreement provided that:

- A portion of GMAC's secured claim on the Property, amounting to $95,000, would be deemed avoided under § 547, and preserved for the benefit of the bankruptcy estate pursuant to § 551 (the "Compromise Amount").  The adversary proceeding would be dismissed with prejudice as to all defendants.

- The following distributions would be made from the house sale proceeds: (1) the $95,000 Compromise Amount would be paid to Trustee, of which $85,000 would be allocated to payment of allowed administrative expenses, and $10,000 would be distributed to unsecured creditors, which Trustee estimated would result in a 55 percent dividend (assuming $18,000 in total allowed unsecured claims); (2) the balance of the proceeds would be disbursed to GMAC for application on its secured claim; and (3) the Hoopers would "not be entitled to receive any portion of the Net Proceeds, whether on account of any asserted homestead exemption or otherwise."

The Hoopers filed an objection to the Compromise Motion on December 28, 2010.  In the objection, they asserted, inter alia, that GMAC was not a creditor, secured or otherwise, because GMAC was not the current owner or assignee of the Note, and because GMAC's position was founded on what they described as the fraudulent, criminal act of the unauthorized recording of the 2008 DOT.  The Hoopers also suggested that it was unfair for Trustee and GMAC to effectively deny Hoopers' entitlement to a homestead exemption through a settlement where the Hoopers were not parties.

-6-

**Objection to GMAC's Proof of Claim**

GMAC had filed secured Proof of Claim #3-1 in the Hoopers' bankruptcy case on September 15, 2009 in the amount of $1 million. Attached to the proof of claim were copies of the 2006 and 2008 DOTs; the Note was not attached.

The Hoopers filed an Objection to the GMAC claim on November 30, 2010. Among the arguments they advanced to support this objection were that GMAC had not established that it was the holder of the Note with authority to enforce it, and that the alteration and recording of the 2008 DOT was fraudulent, without their consent, and in violation of Cal. Penal Code § 132 (Offering False Evidence).

**Hearings on Compromise and Objection to Claim**

The bankruptcy court ordered that the Hoopers' objection to claim and Trustee's Compromise Motion be heard together. The first hearing occurred on January 11, 2011. Trustee, the Hoopers, and the GMAC Parties were represented by counsel. The court informed the parties that it was concerned about the standing of GMAC. Specifically, the court indicated it lacked adequate evidence that GMAC was holder of the Note:

> The evidence that has been submitted in response to the objection to claim was not attached to the original proof of claim [and] is suspicious at best that GMAC is the holder. The reason I say that is because they hold, according to their declaration and the documents, based on an in-blank endorsement on an unnumbered page signed by a person whose authority is unknown to the Court on an unknown date.

Hr'g Tr. 2:19-25, January 11, 2011. After hearing from the parties, the bankruptcy court continued the hearing to March 29, 2011, and instructed GMAC to produce the original Note;

-7-

authenticate the endorsement on the Note from Greenpoint to GMAC; and provide evidence that the person who signed the endorsement was authorized to do so.

At the continued hearing on March 29, 2011, Trustee, the U.S. Trustee, the Hoopers and the GMAC Parties were represented by counsel. GMAC presented what it represented was the original Note to the bankruptcy court. The bankruptcy judge examined the Note, observing that it contained the signature of Marlow Hooper, was endorsed in blank on the back of its fourth page, and that the endorsement was signed by "Thomas K. Mitchell, Vice President of Greenpoint." The court observed that the form of endorsement was consistent with how notes in general are endorsed.

The bankruptcy court also acknowledged that GMAC had submitted the declaration of Rosa Medina, a former vice president of Greenpoint. The Medina declaration asserted that she was vice president of Greenpoint for seventeen years prior to the closure of that company in 2007, and that Thomas K. Mitchell was a vice president of Greenpoint while she was employed there.

At this point, the bankruptcy court stated that, based on the submission of the original Note and the Medina declaration, "[c]ertainly that's prima facie evidence that GMAC is the holder of the Note." Hr'g Tr. 4:14-16, March 29, 2011. The court concluded: "[B]ased on the record before the court, my tentative [ruling] is this is an enforceable claim. GMAC has standing. They have the original note. It is an enforceable secured claim." Hr'g Tr. 6:24-7:1. Later in the hearing, the court confirmed this ruling:

I'm going to overrule the Debtor's objection to the

-8-

> claim on behalf of the estate. I think that the issue of whether or not GMAC is the holder has been satisfied by their bringing the endorsed Note, the original Note, to court. . . . I would overrule the objection, and I would grant the compromise.

Hr'g Tr. 40:25-41:4, 41:21-22.

The bankruptcy court then went on to make findings on each of the Ninth Circuit's criteria for approving a compromise set forth in Martin v. Kane (In re A & C Props.), 784 F.2d 1377 (9th Cir. 1986): that the dispute at issue in the compromise was highly complex and that Trustee was not confident of his chances for success in litigation; that collectibility was not a concern as the funds were in a blocked account; that the four hearings over legal ramifications were sufficient for the court to determine that the complexity and cost of continuing proceedings would justify ending the dispute; and that no creditor had objected to the compromise. Therefore, the court concluded, the A&C Props factors were met. Hr'g Tr. 42:1-43:13.

The bankruptcy court entered an Order Authorizing Trustee's Global Compromise on April 20, 2011, "pursuant to the findings made on the record." On May 31, 2011, the court entered an Order Overruling Debtors' Objection to Claim of GMAC Mortgage, LLC, Claim #3, "pursuant to the findings of fact and conclusions of law, stated in the hearings of January 11, 2011 and March 29, 2011."

**The Reconsideration Motion and Hearing**

The Hoopers filed a motion for reconsideration of the orders approving the compromise and overruling the claim objection on April 11, 2011. The Hoopers argued that newly discovered evidence showed that the Thomas K. Mitchell signature on the Note

endorsement was "stamped," not an original; they provided several examples of Mitchell's signature in precisely the same location on other note endorsements to support this allegation.

The bankruptcy court held a hearing on the reconsideration motion on May 3, 2011 at which it disposed of the Hoopers' newly discovered evidence argument. The court observed that signatures on commercial paper are self-authenticating to the extent provided by general commercial law. Fed. R. Evid. 902(9). The applicable general commercial law of California provides that: "Each signature on the instrument is admitted unless specifically denied in the pleadings." Cal. Com. Code § 3308. The court therefore concluded that there was no new evidence before the court, and denied the motion for reconsideration. The court entered its order denying reconsideration on May 23, 2011.

The Hoopers filed a timely appeal of the orders approving compromise, overruling objection to claim, and denying reconsideration on May 27, 2011.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Whether the bankruptcy court abused its discretion in approving the Compromise.

Whether the bankruptcy court abused its discretion in denying the Hoopers' objection to GMAC's claim.

Whether the bankruptcy court abused its discretion in denying the motion for reconsideration.

-10-

## STANDARDS OF REVIEW

The bankruptcy court's approval of a compromise is reviewed for abuse of discretion. Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.), 255 F.3d 1061, 1065 (9th Cir. 2001).

We review a bankruptcy court's decision to allow or deny a proof of claim for an abuse of discretion. Bitters v. Networks Elec. Corp. (In re Networks Elec. Corp.), 195 B.R. 92, 96 (9th Cir. BAP 1996) ("the bankruptcy court has sole jurisdiction and discretion to allow or disallow the claim under federal law.").

A bankruptcy court's denial of a motion for reconsideration is reviewed for an abuse of discretion. Arrow Elecs., Inc. v. Justus (In re Kaypro), 218 F.3d 1070, 1073 (9th Cir. 2000); Sewell v. MGF Funding, Inc. (In re Sewell), 345 B.R. 174, 178 (9th Cir. BAP 2007).

In applying the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the correct legal rule was applied, we then consider whether its "application of the correct legal standard was (1)illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. Only in the event that one of these three apply are we then able to find that the bankruptcy court abused its discretion. Id.

///

///

///

-11-

**DISCUSSION**

**I.**
**The bankruptcy court did not abuse its**
**discretion in approving the Compromise.**

Rule 9019(a) provides that, "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. . . ."  The bankruptcy court is vested with considerable discretion in approving compromises and settlements. Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988).  To approve a compromise, the bankruptcy court must be satisfied that its terms are "fair, reasonable and equitable."  In re A & C Props., 784 F.2d at 1382.  In assessing the reasonableness of a compromise, the bankruptcy court should consider:

> (a) The probability of success in the litigation;
> (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id.

In this case, the bankruptcy court explicitly addressed each of the A&C Props. factors.

Probability of success in the litigation.  The bankruptcy court noted that the central dispute resolved by the compromise was whether GMAC held an enforceable secured claim as to the Property in light of the incorrect legal description of the Property in the 2006 DOT.  The court noted that neither Trustee nor the GMAC parties were confident of their prospects for success in litigating this issue.  Further, the court observed that, however the court might rule, GMAC's title companies would likely

-12-

insist on an appeal. Consequently, in the bankruptcy court's view, it was unclear that Trustee would be successful.

The difficulties, if any, to be encountered in the matter of collection. This was not a relevant factor to the bankruptcy court in this case, because the proceeds of the sale of the Property, the only funds potentially available to the estate, were being held in a blocked account maintained by Trustee until conclusion of the adversary proceeding.

The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it. The bankruptcy court repeated its views about the legal complexity of the dispute noted above. Additionally, the court noted that it had held "four or five hearings on the legal issues over the legal ramifications of what's involved in the Compromise" and that the litigation was "sufficiently complex and costly to have the matter end now[.]" Hr'g Tr. 42:17-25.

The paramount interest of the creditors and a proper deference to their reasonable views in the premises. The bankruptcy court determined that the only party benefitting from rejection of the compromise would be the Hoopers:

> The estate would benefit from everything that is before the Court. No party has objected to the Compromise except for the Debtor, which would indicate that the unsecured creditors and — GMAC is either a secured creditor or by far the largest unsecured creditor in this estate, and they have chosen to take what they can take in their compromise, and I think that is significant. . . . I would find that it meets the fourth criteria of the A&C factors.

Hr'g Tr. 43:1-13. In addition, under these facts, the court could also have noted that the compromise provided a 55 percent return to the unsecured creditors, whereas it was uncertain if there

-13-

would be any funds available for creditors if the litigation continued.

In summary, then, in approving the compromise, the bankruptcy court applied the correct legal rule, measuring the reasonableness of the compromise under the factors articulated by the Ninth Circuit in A&C Props. Whether the members of this Panel would independently agree with them, the bankruptcy court's findings and conclusions were supported by competent evidence in the record, and were not illogical, implausible, or without support in inferences that may be drawn from the record. The bankruptcy court did not abuse its discretion in approving the Compromise.

## II.
## The Hoopers' Objection to the Compromise

The Hoopers do not seem to dispute that the A&C Props. factors were satisfied. Rather, they argue that the bankruptcy court should not have approved the settlement with Trustee because GMAC lacked standing, arguing that GMAC was not a creditor, secured or otherwise, as it did not show it was the owner or assignee of the Note. Further, the Hoopers argue that the position of GMAC is built on a fraud and a criminal act in its unauthorized recording of the 2008 DOT.

The Panel recently published an extensive Opinion examining the legal status of parties as holders entitled to enforce promissory notes. See Am. Home Mortg. Servicing, Inc. v. Veal (In re Veal), 450 B.R. 897 (9th Cir. BAP 2011). Briefly, in that opinion, the Panel observed that Article 3 of the Uniform Commercial Code "provides a comprehensive set of rules governing the obligations of parties on [a promissory note], including how

-14-

to determine who may enforce those obligations and to whom those obligations are owed." Id. at 910. "To enforce a note under the method most commonly employed, the person must be a 'holder' of the note." Id. Under Cal. Com. Code § 1201(b)(21), a holder of a note is defined as:

> "Holder," means: (A) the person in possession of a negotiable instrument that is payable either to bearer or, to an identified person that is the person in possession; or (B) the person in possession of a document of title if the goods are deliverable either to bearer or to the order of the person in possession.

See also In re Veal, 450 B.R. at 911.

Under California law, a negotiable instrument may be endorsed in blank, that is, endorsed without reference to an identifiable person. Cal. Com. Code § 3205(b).[9] Where a note is endorsed in blank, it becomes "payable to bearer and may be negotiated by transfer of possession until specially indorsed." Id.; In re Lee, 408 B.R. 893, 899-90 (Bankr. C.D. Cal. 2009) ("If an indorsement does not specify a payee, it constitutes a blank indorsement, as defined in Cal. Com. Code § 3205(b), which makes the note payable to whoever is the bearer of the note.").

When the Hoopers objected that GMAC did not have possession of the Note, the bankruptcy court ordered GMAC to produce the original. GMAC complied at a hearing at which the bankruptcy court had the opportunity to examine the Note; the record reflects that the Hoopers and their counsel had been given an opportunity before the hearing to examine the actual Note. GMAC also

---

[9] The Official Comment to Cal. Com. Code § 3305(b) notes: "A blank indorsement is usually the signature of the indorser on the back of the instrument without other words."

-15-

submitted other evidence to the bankruptcy court, the Medina declaration, to show that the Note had been properly endorsed in blank. On this basis, the bankruptcy court could rule that, because GMAC was in possession of the properly endorsed Note, it was the holder under California law. In re Hwang, 438 B.R. 661, 665 (C.D. Cal 2010) (concluding that under California law, the possessor of the Note has the authority to enforce it, even if it is not in lawful possession of the Note). As the holder of the Note, GMAC had standing and power to enforce it. In re Veal, 450 B.R. at 911.

In both the bankruptcy court and this appeal, the Hoopers object that there is no evidence of the date of the transfer of the Note from Greenpoint to GMAC. After noting that under the facts of this case it would be very difficult to determine the date of transfer, the bankruptcy court ruled that, "I don't think when [the Note] was transferred is important." Hr'g Tr. 5:2-3, March 29, 2011. This ruling was correct. There is nothing in the California Commercial Code that requires proof of the date of transfer as a condition to enforcing a note. The statute requires only that GMAC be in physical possession of a properly endorsed Note; when that Note was transferred to GMAC is legally irrelevant. Cal. Com. Code § 3205(b); In re Hwang, 438 B.R. at 665.

The sole argument made by the Hoopers on reconsideration challenged the signature of Thomas K. Mitchell on the endorsement to the Note because it was a stamped signature, rather than an original one. However, the bankruptcy court properly dismissed this objection, finding that "the signature on [the] note

-16-

endorsement is self-authenticating under Evidence Code 902(9)."[10] Hr'g Tr. 1:21-23, May 3, 2011. The applicable general commercial law of California provides that:

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.

Cal Com. Code § 3308(a). Construing this statute, courts have held that it "creates a presumption that commercial paper offered in evidence is authentic and dispenses with a requirement of extrinsic evidence for admissibility." Mandalay Resort Group v. Miller (In re Miller), 310 B.R. 185, 193 (Bankr. C.D. Cal. 2004)

Under California law, the "burden of establishing" the validity of the signature is on GMAC. Cal. Com. Code § 1201(b)(8) ("'Burden of establishing' a fact means the burden of persuading the trier of fact that the existence of the fact is more probable than its nonexistence."). The bankruptcy court found that, based on the Medina declaration, GMAC had offered sufficient evidence of Mitchell's employment and his authority to endorse the Note. According to the court, "I have no evidence whatsoever that that is not a proper signature." Hr'g Tr. 3:19-25, May 3, 2011. We

---

[10] Fed. R. Evid. 902(9) **Self Authentication** Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:. . . . (9) Commercial paper and related documents. Commercial paper, signatures thereon, and documents related thereto to the extent provided by general commercial law.

-17-

perceive no error in this ruling.

As to the Hoopers' contention that the Note was invalid because it bore a stamped, rather than handwritten signature, this position is incorrect under California law. The statutes do not require handwritten signatures on endorsements. Cal. Com. Code § 3401(b)(1) ("Liability on instrument; Signature . . . (b) signature may be made (1) manually or by means of a device or machine[.]"). The Official Comments to this provision instructs that "A signature may be handwritten, typed, printed or made in any other manner." Therefore, the bankruptcy court did not err in deciding that "The fact [that] the signature is a stamp, only if there was some ability to prove that it was stamped without the authorization of the person whose name appeared on it, would the Court have any problem with this stamp." Hr'g Tr. 3: 9-12, May 3, 2011.

The bankruptcy court also properly rejected the Hoopers' argument that it should deny the compromise because GMAC had forged the 2008 DOT, and that the bankruptcy court should not favor a party whose position is based on the commission of a criminal act. To be precise, the court indicated that it had based its rulings on the 2006 DOT, without regard to the 2008 DOT. To the extent that there was doubt about the validity of the 2006 DOT, the court found that the apparent error in legal description of the property was simply a "scrivener's error." Hr'g Tr. 37:7-9.

Given proper circumstances, a state court may correct a "scrivener's error" in a contract. Bonshire v. Thompson, 52 Cal. App. 4th 803, 811 (Cal. Ct. App. 1997). In this case, the

-18-

evidence is uncontroverted that the legal description in the 2006 DOT was inaccurate. However, the Hoopers never suggested that they had not received the loan proceeds, or that they had not intended to encumber the Property located at the address set forth in the 2006 DOT. To the contrary, the evidence presented to the bankruptcy court clearly established that they had. Thus, because under these circumstances a court could have corrected the scrivener's error in the 2006 DOT, the bankruptcy court did not err in declining to disregard the incorrect legal description on the 2006 DOT.

## III.
### The bankruptcy court did not abuse its discretion in overruling the Hoopers' objection to the GMAC claim.

"A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Rule 3001(f). Upon objection, the proof of claim provides "some evidence as to its validity and amount" and carries over a "mere formal objection." Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell), 223 F.3d 1035, 1039 (9th Cir. 2000). The objector must produce sufficient evidence "tending to defeat the claim by probative force equal to that of the allegations in the proofs of claim themselves." Id. (citing In re Holm, 931 F.2d 620, 623 (9th Cir. 1991)). "The ultimate burden of persuasion remains at all times upon the claimant." In re Lundell, 223 F.3d at 1039.

In this case, GMAC's proof of claim was prima facie valid, and the Hoopers' arguments were not of equal probative force.

In contesting the claim, the Hoopers presented the identical objections they had posed to the Compromise, that GMAC was not the

-19-

holder of the Note and that the alteration and recording of the 2008 DOT was fraudulent, without consent, and in violation of Cal. Penal Code § 132 (Offering False Evidence). The bankruptcy court overruled the claim objection for the same reasons that it had approved the Compromise, that GMAC was the holder of the Note with power to enforce it, and that the 2008 DOT was irrelevant to its considerations. Hr'g Tr. 40:25-41:4. In doing so, there remained no reason for the bankruptcy court to entertain Debtors' contest to GMAC's proof of claim. For the reasons given above, we agree with the bankruptcy court, and find no abuse of discretion in its overruling the Hoopers' objection to GMAC's claim.

On appeal, the Hoopers raise one additional objection to the bankruptcy court's decision overruling their objection to GMAC's claim. They contend that the bankruptcy court erred when it ruled on the Compromise Motion before it ruled on the objection to claim. However, we need not address this issue because the Hoopers' argument is simply incorrect. As shown by the hearing transcript, the bankruptcy court first ruled on the objection to claim at the March 29, 2011 hearing. Hr'g. Tr. at 40:25. It later, at the same hearing, approved the Compromise. Hr'g Tr. at 41:21-22. That the bankruptcy court's formal order overruling the objection to claim was entered after the order approving the Compromise is of no moment. Both orders expressly refer back to the oral rulings made by the bankruptcy court at the March 29 hearing, and made no changes to those rulings.[11]

---

[11] At oral argument, the Hoopers also attempted to argue that the bankruptcy court erred in its ruling that they did not have a
(continued...)

-20-

## IV.
### The bankruptcy court did not abuse its discretion in denying the Hoopers' motion for reconsideration.

A motion for reconsideration filed within ten[12] days of the entry of a judgment is reviewed under Civil Rule 59(e). <u>Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.</u>, 248 F.3d 892, 899 (9th Cir. 2001). Civil Rule 59(e) is made applicable in bankruptcy proceedings by Rule 9023. Although Civil Rule 59(e) permits a court to reconsider and amend a previous order, "the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." <u>Kona Enter., Inc. v. Bishop</u>, 229 F.3d 877, 890 (9th Cir. 2000). A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law. <u>Id.</u> "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." <u>Id.</u> (emphasis in original).

---

[11](...continued) right to a homestead exemption based on its examination of whether there was an equitable mortgage. This issue was not identified in the Hoopers' statement of issues on appeal, nor was it discussed in their brief. Issues "not argued in the opening brief are deemed forfeited." <u>Koerner v. Grigas</u>, 328 F.3d 1039, 1048-49 (9th Cir. 2003). The discretionary exceptions to this rule (manifest injustice would result, appellee raised the issue in its brief, or opposing party would not be prejudiced) do not apply or were not argued. We decline to review this issue on appeal.

[12] The ten-day limit for filing requests under Civil Rule 59(e) was in effect at the time of the <u>Am. Ironworks</u> case. The time for filing requests under Rule 9023, incorporating and modifying Civil Rule 59(e) for bankruptcy purposes, was enlarged to fourteen days in 2009.

Here, the Hoopers sought reconsideration based upon what they described as newly discovered evidence – that the Mitchell signature on the Note was not handwritten, but was instead stamped. As discussed above, the bankruptcy court properly disposed of this argument by noting that under both federal and California law, a stamped signature on a commercial document is self-authenticating. Further, there is no requirement in California commercial law that a signature be handwritten. Thus, it was immaterial that the signature was stamped.

At the hearing on reconsideration, the Hoopers attempted to argue that an intervening change of law had taken place, citing Densmore v. Litton Loan Servicing, L.P. (In re Densmore), 445 B.R. 307 (Bankr. D. Vt. 2011). The bankruptcy court discounted this argument because it was raised in a reply brief to GMAC's objection to their motion for reconsideration, which was "too late" for consideration by the court. Hr'g Tr. 8:9-10 (May 3, 2011). The court's decision was also justified because a bankruptcy court decision from Vermont is certainly not "controlling law" in a case in California involving local law, and thus would not meet the threshold requirements for reconsideration under Civil Rule 59(e).

The bankruptcy court did not abuse its discretion in denying the Hoopers' motion for reconsideration.

**CONCLUSION**

We AFFIRM the bankruptcy court's orders.